THE AMERICAN EXPRESS COMPANY *v.* HAIRE and Others.

EXPRESS COMPANY, LIABILITY OF.—If an express company receives for collection, for a compensation, a bill of exchange drawn in one State and payable in another, and delivers the same to a notary for demand and protest on the day before such demand and protest

should be made, and such notary makes demand and protest one day before the maturity of the bill, whereby the drawer and endorsers are discharged, the acceptor being insolvent, the express company will be liable to the holder for the amount of the bill and interest.

APPEAL from the *Marion* Common Pleas.

PERKINS, J.—On the 25th day of *October*, 1857, *Dunlevy, Haire & Co.*, of *Indianapolis, Indiana*, owned and possessed a bill of exchange, drawn by *R. A. Douglass*, endorsed by *Blake* and *Vanblaricum*, and accepted by *P. A. Douglass*, 309 *Broadway, New York*, for 5,000 dollars. The last day of grace for payment of the bill was *November* 6th, 1857.

On the 25th day of *October*, 1857, the *American Express Company* received the above described bill of *Dunlevy, Haire & Co.*, at *Indianapolis*, in the capacity of agents, to collect it for a reasonable compensation, and return the proceeds to the holders of the bill at *Indianapolis*. The company took the bill to *New York*, and, on the 5th of *November*, placed it in the hands of a respectable notary for demand and protest. The notary demanded payment, and protested the bill on that day, and no other demand was ever made. The demand and protest should have been made on the 6th of *November*, instead of the 5th, when they were made. The company never collected the bill; the endorsers, then solvent, were discharged by the carelessness of the notary, and the drawer and acceptor are insolvent.

*Dunlevy, Haire & Co.* sued the express company for the amount of the bill, and they recovered below.

The main question in the cause is: Did the express company become liable to the holders for the amount of the bill on account of the failure to demand its payment on the proper day? We say this is the real question; because, if the express company became liable by that failure, we do not see that the de-

The American Express Co. v. Haire and Others.

lay of the holders to sue upon that liablility, or their attempt to get their money on the bill from the indorsers, has extinguished that liability. See Ed. on Bills, p. 405. If the bill was not one requiring protest, not one requiring the services of a notary, then the notary can be regarded as simply the agent of the express company, and that company as liable for his negligence. The bill in question was drawn in one State payable in another. The great weight of authority certainly is, that a foreign bill must be protested by a notary, if one be convenient; if not, then by persons present. 1 Par. on Notes and Bills, pp. 358, 633, and 342; 2 *id.* 328; *Miltenberger* v. *Spaulding*, 33 Mo. 421; *The State Bank* v. *Hayes*, 3 Ind. 400. In those States, then, that hold a bill drawn in one State of the Union on a person in another, to be completely a foreign bill, it would follow that a notary's protest would, as a general rule, be required.

Taking it for granted, then, for the purposes of this case, that the bill before us is a foreign one, and required a notarial protest, and a notary having, in fact, been employed, is the express company liable for his negligence? Or did the liability of that company cease when it delivered the bill, at the proper time, &c., to a competent notary, supposing the delivery was thus made in this case?

Upon this question the authorities are in conflict. One division of the authorities holds that a notary is a public officer, who all may or must employ, and who is alone answerable for his own negligence to the injured party. But the *New York* authorities, and those in some other States, are different. Says *Mr. Parsons*, in his late work on Notes and Bills, vol. 1, p. 480: "The authorities are not uniform on this question; some hold the bank [or other agent] liable for the proper conduct of the notary employed; and those which hold the bank discharged by due care in selection, [of the notary] seem to apply the same rule to any person selected with due care as a competent agent."

The American Express Co. *v.* Haire and Others.

Chancellor *Kent*, in his Commentaries, vol. 3, p. 94 of the 6th edition, and p. 128 of the 10th edition, in note, says: "In *South Carolina* the rule of law is in conformity with that declared in *New York*, and a bank who receives a note for collection is liable for any neglect by which the endorsers are discharged. The use of the monies collected is deemed a sufficient consideration for the undertaking. The bank [or other agent: the express company, for example,] must, therefore, see to the demand of payment of the maker, and to the giving of due notice of non-payment to the endorsers. If the note be placed in the hands of a notary, he is to be regarded as the agent of the bank, and for whose neglects and mistakes the bank is liable. *Thompson* v. *The Bank of South Carolina*, 3 Hill's S. C. Rep. 77." In *Hoard* v. *Garner*, 3 Sandf. N. Y. Rep. 179, the *New York* doctrine is stated thus, by Judge *Sandford:* "The principle established by *Allen* v. *The Merchants Bank*, 22 Wend. 215, was, that the implied contract of the banker was an undertaking to do the thing itself, and was not the delegation of an agent or authority to procure the thing to be done; that the contract looked mainly to the thing to be done, and his undertaking was for the due use of all proper means for its performance; that it was not a contract only for the immediate services of the agent and his acting faithfully as the representative of his principal; that in the latter case the responsibility ceases with the limits of the personal services undertaken: in the other it extends to cover all the necessary and proper means for the accomplishment of the object, by whomsoever used or employed." For later *New York* cases, see 3d Selden, 459; 3d Kernan, 203; Edwards on Bills, pp. 112, 402, 403, and 476.

*Ohio* follows the line of these decisions. *Reeves, Stevens & Co.* v. *The State Bank of Ohio*, 8 Ohio St. Rep. 465.

*Indiana* has followed the same line of decision, as applicable to banks; *Tyson* v. *The State Bank of Indiana*, 6 Blackf.

225; and as applicable to attorneys; *Abbott et al.* v. *Smith,* 4 Ind. 452. The question as to the applicability of the doctrine to a notary, has not arisen in this State, nor do we think it now arises. The express company did not, in this case, deliver the bill to the notary at the proper time. We think the negligence in this case is chargeable to the express company. That company did not limit themselves, in the use of the notary, to his official functions; and their own act, in prematurely placing the bill in his hands, tended to mislead him. If the company had retained the bill till the hour of presentment for payment, then accompanied the notary to the place of demand, or even if they had not accompanied him, a premature presentment would not have been made. See 4 Wharton (Penna.) Rep. 113; 18 Penna. St. Rep. 263; 21st *id.* 506.

On this point we adopt the language of Judge *Ray,* who decided the case in the Common Pleas:

"It was clearly the duty of the express company to convey the bill to *New York,* and, at the proper time and place, to present the same and demand payment thereof. It was their duty to retain the custody of the bill and the control of the same. If payment was refused, they should cause the same to be duly protested and notice given. It can not be insisted that because the acceptor might not pay the bill, therefore the express company were not required to present it and demand its payment. The acceptor might, and the presumption in such case is, that he will pay upon demand; and if without any demand the bill be given to a notary and he collects and retains the proceeds, the express company could not evade responsibility for the default of the officer. It would have been a case in which the employment of a subagent is not required. The notary is not, by virtue of his office, a collector; and if he were, the defendants are the collecting agents selected by the plaintiffs. If the notary,

having possession of the bill the day before it was due, had negotiated the same, it is clear the defendants would have been liable. The bill was entrusted to their custody, and, unless there be a necessity for the transfer of that custody, it can not be lawfully changed. Did that necessity exist? Cer-. tainly it did not at the time it was made, and it is not clear but that such delivery of the bill to the notary, the day before it became payable, followed as it was by a protest upon the same day, was the immediate cause of the default. But a review of the duties of a notary may furnish a still more satisfactory answer to the inquiry. The peculiar province of this officer is to furnish evidence. His certificate and seal are received as proof of the fact of the presentment of bills of exchange for acceptance or payment. He is not, either at common law or by statute, made the custodian of the paper, but simply the witness to attest and prove the act performed in his presence or under his eye. The bond he gives is but nominal and the law does not require that papers of such value shall be placed in his absolute, uncontrolled charge. He is not like a sheriff, who is the custodian of the writ he executes, and who makes his return upon that writ. The one is an officer of the law having charge of the thing itself, with power to enter thereon his doings and retain the possession thereof and return the same into court. The other is but a witness to attest what is done, perhaps by another, in his presence, having no power over the paper presented and no legal right to its custody or control. It is convenient, doubtless, to transfer the possession of the paper to the notary, to hunt up the acceptor and make demand, but this convenience is accompanied by its risk, and the risk not being absolutely necessary, must be assumed by the party who voluntarily incurs it on account of its convenience."

It is said the recovery below was too large, interest having been allowed on the bill from maturity. Less than that sum

would not have been recovered in a suit on the bill against the indorsers had they not been discharged by the negligence of the express company. Says Edwards on Bills, page 405: "Where a bank with whom a note is deposited for collection fails to take the proper steps to charge the drawer or indorsers, in consequence of which the holder is unable to collect the amount of the bill, the measure of damages is the face of the bill with interest." See, also, Sedgwick on Dam. 353, citing *Walker* v. *Smith*, 4 Dall. 389.

*Per Curiam.*—The judgment below is affirmed, with 1 per cent. damages and costs.

*Newcomb & Tarkington*, for the appellant.

*Barbour & Howland*, for the appellee.